**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LINDA DUDICH,** *et al.*, | : | Case No. 1:05cv0610 |
| | : | |
| Plaintiffs, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| **UNITED AUTO WORKERS LOCAL** | : | **ORDER** |
| **UNION NO. 1250,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

This case involves claims asserted under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185. The Court has jurisdiction under 28 U.S.C. §1331.

Plaintiff Linda Dudich ("Plaintiff") - on behalf of herself and a purported class of similarly situated members of the United Auto Workers Union Local Number 1250 (the "UAW") - alleges that Ford Motor Company ("Ford") breached a collective bargaining agreement with the UAW, and that the UAW breached a duty of fair representation in handling prior grievances filed by Plaintiff. Together, the claims for breach of a collective bargaining agreement and breach of the duty of fair representation are known as - and referred to by the parties as - a "hybrid Section 301 claim."

Before the Court are two Motions for Summary Judgment filed by the UAW and Ford (Doc. Nos. 18 and 20). The grounds under which the UAW and Ford seek summary judgment are the same. Both defendants argue that Plaintiff's claims are barred for two reasons: (1) because the statute of limitations for a hybrid Section 301 claim has long expired; and, (2) because Plaintiff has failed to

exhaust her internal union remedies.[1] For the reasons set forth below, both Motions for Summary Judgment (Doc. Nos. 18 and 20) are **GRANTED**.

**I.     BACKGROUND**

The following facts are undisputed. Plaintiff was first hired by Ford on May 3, 1978. She was represented by the UAW at the time of her hiring, and remains a member of the UAW to this day. *Plaintiff Dep.*, pp. 13-14. Plaintiff continued to work for Ford until she was laid off on September 21, 1979. *Plaintiff Dep.*, p. 21. During Plaintiff's employment, a 1976 national collective bargaining agreement between the UAW and Ford was in effect. The agreement contained a provision explaining that a "continuously unemployed" employee would maintain seniority for a period of time equal to the length of the employee's service, but no less than eighteen months. *Parente Aff.*, Ex. A; *Plaintiff Dep*, Ex. 15. Plaintiff worked for Ford for seventeen months between May 1978 and September 1979. By the express terms of the national collective bargaining agreement, therefore, Plaintiff was entitled to retain her seniority for eighteen months after her layoff (i.e. until April 1981). After expiration of this period of time, her seniority was considered "broken." *Id.*

Plaintiff returned to Ford as a "vacation replacement" for approximately three weeks between May 30, 1989 and June 19, 1989. In order to work as a vacation replacement, Plaintiff was required to complete and sign an Hourly Employment Application. Plaintiff was assigned a new seniority date

---

[1] At the Case Management Conference held on July 15, 2005, the parties agreed that it would be appropriate to address the threshold issues of whether Plaintiff's Complaint is barred due to passage of the applicable statute of limitations and/or failure to exhaust internal union remedies, before expending resources on the propriety of Class Certification or Merits discovery. The case has been bifurcated, accordingly, and the parties have conducted discovery and submitted dispositive motions on only these threshold questions. Consistent with this procedure, Plaintiff's previously filed Motion for Class Certification was termed as premature, subject to refiling after resolution of these issues.

of May 30, 1989 during this time. Her new seniority date was printed on the back of the employment application signed by Plaintiff. *Plaintiff Dep.*, p. 43. Eighteen months after her departure in June 1989, her seniority was again "broken."

In late 1993 and early 1994, Ford began hiring additional workers for its plant in Brook Park, Ohio. Ford gave "preferential hiring consideration" to former qualified employees and employees who had broken seniority, including Plaintiff. It did so by temporarily discontinuing the normal job lottery process for hiring new employees until Ford was able to consider the more than 300 former employees who applied for rehire. Although not all of the former employees were rehired, and no employment guarantees were made, Plaintiff was - in fact - rehired on March 31, 1994. *Plaintiff Dep.*, p. 64.

At the time of Plaintiff's rehire, Ford gave notice to all former employees that they would be required to serve a 90-day probationary period. Rehires were further informed that, after the probationary period, they would be assigned a new seniority date to reflect their date of rehire. Plaintiff does not dispute that she was given a new seniority date of March 31, 1994, and concedes she knew at the time of her rehire that her prior seniority dates of May 3, 1978 and May 30, 1989 were no longer in effect. *Plaintiff Dep.*, p. 61.

Approximately two years after being rehired by Ford, Plaintiff began to suspect she had been aggrieved by the assignment of her new seniority date. In 1996, Plaintiff and other rehired employees approached UAW representatives about filing a grievance on essentially two issues: (1) the assignment of incorrect seniority dates following their rehire; and, (2) the denial of work opportunities at other Ford plants while laid off and/or the failure to receive "preferred status" by way of a transfer to another Ford plant before their layoff. *Plaintiff Dep.*, pp. 75-77 and Ex. 3. Plaintiff complained that her correct seniority date should have been her original date of hire - May 3, 1978 - instead of her rehire date of

March 31, 1994.[2]  The UAW refused to file a grievance over these issues, however, and repeatedly told Plaintiff there were "no grounds" for filing a grievance because they were without merit under the contract between Ford and the UAW.  *Plaintiff Dep.*, p. 76 and Ex. 3.  It was clear to Plaintiff at this time that the UAW was not going to take any action on her behalf.  *Plaintiff Dep.*, p. 77.  Undaunted, however, Plaintiff continued to voice her complaints at union meetings only to be told she was "out of order."  *Id.*

In March of 1999, Plaintiff applied for the position of material control specialist.  She bid on this position using her March 31, 1994 seniority date.  *Plaintiff Dep.*, pp. 67-68.  It was specifically through the use of this date that Plaintiff obtained the position over other Ford employees who had internally applied for the position.  Plaintiff, nevertheless, continued to maintain that this date was "incorrect."  In 2000, Plaintiff and four other individuals approached union representatives on at least three separate occasions about filing a grievance on this issue.  Each time, the union representatives - as in the past - told the potential claimants that their grievances did not have any contractual merit.  *Plaintiff Dep.*, pp. 125-128.

On February 19, 2001, Plaintiff agreed to be a participant in a grievance filed by several other Ford rehires.  Grievance number GP 2588 asserted the same two issues about which Plaintiff had been complaining since 1996, and on which the Union had previously refused to take action.  In the grievance, the claimants demanded that their seniority date be reinstated to their original hire date.

---

[2]  As may be obvious, Plaintiff's Complaint is not a semantical one.  As in most companies, an employee's seniority date at Ford is meaningful.  Though the parties dispute how much weight is given to them, it appears that Ford at least refers to seniority dates in determining such matters as promotions, job changes and layoffs.  Plaintiff claims that an earlier seniority date would have prevented her from being "bumped" from certain jobs and may provide a variety of benefits to her in the future with respect to her job status and placement.

4

*Plaintiff Dep.*, Ex. 10. They also claimed damages resulting from an alleged failure to be given preferential status for rehire or transfer to other Ford plants while on layoff.

On June 10, 2001, the UAW held a special meeting to discuss the issues relating to seniority that had been circulating within the Ford plant since at least 1996. During the forum, UAW officials went over the provisions in the 1976 collective bargaining agreement and explained why the break in seniority was contractually proper. *Plaintiff Dep.*, pp. 109-112. Plaintiff did not attend the meeting, but was aware of the purpose of the meeting and also spoke to employees who had been present. *Id.*

At some point after the meeting, in or around September 2001, the then-current President of Local 1250, Nick Parente, spoke to Plaintiff and informed her that he had checked the contract between Ford and the UAW and that he believed Plaintiff had "no recourse." *Plaintiff Dep.*, p. 147. A few months later, on November 27, 2001, the UAW withdrew grievance number GP 2588 after it concluded there was no evidence to establish a violation of the collective bargaining agreement. *Plaintiff Dep.*, pp. 79-81 and Ex. 10. Plaintiff admits that, by the end of the year 2001, she knew this grievance was "dead." *Plaintiff Dep.*, p. 81.

Not to be deterred, Plaintiff spoke to other employees with similar complaints. During her investigation, she came into possession of a grievance filed by another Ford rehire who likewise complained that he was not given "preferred status" for transfer to another Ford location following his layoff. Plaintiff admits she knew that this employee's grievance, which was almost identical to hers, was dismissed as "extremely untimely" because the acts underlying the alleged violation occurred many years earlier. *Plaintiff Dep.*, p. 83.

It would appear from the record that things were relatively quiet after this point. But on May 21, 2003 - with the assistance of independent legal counsel - Plaintiff prepared and filed yet another

5

grievance. Grievance number GP 2627 contained the same exact complaints that were voiced by Plaintiff in the prior grievance she signed, and which had been withdrawn by the UAW for lack of contractual merit. This second grievance - again - demanded that the seniority date for those signing the grievance be changed to their original date of hire. *Plaintiff Dep.*, Ex. 16. Plaintiff explained that she spent over one year prior to filing GP 2627 researching her grievance and gathering data regarding rehires who, like her, allegedly had been wronged by Ford's treatment of its laid-off employees. Plaintiff waited until May 21, 2003 to file her grievance, however, so she could attempt to convince other Ford employees to join in it. *Plaintiff Dep.*, p. 92.

On January 5, 2004, grievance number GP 2627 was denied as untimely (like those previously filed by Plaintiff and others) because the acts underlying the asserted violations had occurred years earlier. On February 3, 2004, Plaintiff appealed this decision to the UAW International Executive Board - again with the assistance of independent legal counsel, who signed the appeal. That appeal was ultimately dismissed for failure to conform to the rules of the International Union because no union member had personally signed the appeal. Plaintiff apparently also filed an internal appeal of the grievance.

Also during this time, in or around February 2004, Plaintiff's attorney filed an unfair labor practice charge against the UAW with the National Labor Relations Board complaining about Local 1250's reaction to her grievance and treatment of those who participated in it. *Plaintiff Dep.*, Ex. 17. On April 30, 2004, Plaintiff was personally notified - by letter from the National Labor Relations Board - that her charge against the UAW was being dismissed due to a lack of sufficient evidence. *Plaintiff Dep.*, Ex. 19.

While there is some confusion in the record about what occurred next, it appears that, on June

6

24, 2004, Ford denied Plaintiff's internal appeal of grievance number GP 2627, concluding that the collective bargaining agreement had not been breached. On July 2, 2004, the UAW advised Plaintiff and her counsel that no further action would be taken on the grievance and that it had been withdrawn. *Plaintiff Dep.*, p. 134. The Plaintiff again attempted to appeal her grievance to the International Executive Board and, again, that appeal was signed by her counsel (and only her counsel). Again, that appeal was dismissed for failure to follow appropriate filing procedures. Plaintiff was informed of this decision on August 24, 2004 and no further appeals were taken by her or on her behalf. This case was filed on February 18, 2005.

II.     **STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient

to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. DISCUSSION

The issue presently before the Court is whether there are any genuine issues of material fact presented by the record that require a trial for resolution. Whether a Complaint has been filed within the time permitted by law is a legal question that can be decided on a Motion for Summary Judgment. In this case, two legal questions are presented to the Court. The outcome of the first (timeliness) determines whether it is necessary to address the second (failure to exhaust administrative remedies). Upon reviewing the evidence in a light most favorable to Plaintiff, the Court concludes that there are no issues of material fact to dispute the untimeliness of Plaintiff's Complaint. The Court, therefore,

finds that this action is time-barred and will confine its Opinion to this finding.[3]

### 1. Statute of Limitations

Section 10(b) of the National Labor Relations Act provides in relevant part:

> [N]o complaint shall issue based upon any unfair labor practice occurring more than **six months** prior to the filing of the charge with the Board.

29 U.S.C. § 160(b)(emphasis added). This statute of limitations is borrowed from - and applies to - breach of collective bargaining agreement claims against employers, as well as fair representation claims against unions. The Supreme Court, therefore, has determined that a "hybrid Section 301 claim" must be filed within six months of the alleged breach. *Del Costello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 169 (1983).

The six-month period begins to run when the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the violation." *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993). "The determination of the accrual date is an objective one: the asserted actual knowledge of the plaintiff is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning their right to sue." *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994). "[A] hybrid § 301 action

---

[3] The Court notes, however, that a plaintiff generally may not bring a hybrid Section 301 claim without first exhausting internal union remedies. *Wilson v. Int'l Brotherhood of Teamsters*, 83 F.3d 747, 753 (6th Cir. 1996), *cert. denied* 519 U.S. 1041 (1996). While both sides have briefed the applicability - or inapplicability as the case may be - of the general rule to the facts presented here, this issue is mooted by the Court's other conclusions. It is worth mentioning, nevertheless, that this Court has previously granted summary judgment in favor of a union on the precise issue raised by Plaintiff - and on similar facts - with respect to the assertion of a "futility" defense to the exhaustion requirement in the context of a hybrid Section 301 claim. *See Robinson v. UAW Local 1196*, 877 F. Supp. 405 (N.D. Ohio 1995).

accrues against the company when it accrues against the union." *Moore v. UAW Local 598*, 33 Fed. Appx. 165, 167 (6th Cir. 2002). A plaintiff, however, is "not required to sue on a hybrid claim until ... [the plaintiff] reasonably should know that the union has abandoned [his or her] claim." *Wilson v. Int'l Brotherhood of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996), *cert. denied* 519 U.S. 1041 (1996).

Plaintiff filed her complaint on February 18, 2005; accordingly, it will be timely filed only if her claims accrued <u>after</u> August 18, 2004. If Plaintiff's claims accrued before then, her complaint is time-barred unless she did not discover, or could not have discovered through the exercise of due diligence, that the defendants' acts causing the alleged injuries occurred prior to August 18, 2004. In other words, there must be no set of facts occurring before August 18, 2004 which would give rise to the discovery of - or a duty to investigate - the acts giving rise to this cause of action.

The defendants contend that Plaintiff, at a minimum, should have known about the acts constituting the violations complained of beginning in 1989. They further claim it is undisputable that by 1996 and/or 2001, Plaintiff knew of the grounds for the present lawsuit because the UAW took an "unequivocal position" with respect to Plaintiff's complaints during this time by repeatedly advising her they would not pursue her claims against Ford. The UAW and Ford point to the following set of facts, supported by the record, as evidence that Plaintiff had knowledge - long before August 18, 2004 - of the facts giving rise to the alleged breaches mentioned in her Complaint:

(1) Plaintiff acknowledges that when she came back to Ford to work as a vacation replacement in 1989, she knew that she no longer retained her old seniority date of May 3, 1978;

(2) Plaintiff admits she knew that she was assigned a ***new*** seniority date of March 31, 1994 at the time she was rehired by Ford in 1994;

(3) Plaintiff concedes that, by 1996, she believed Ford had violated the collective bargaining agreement - at least with respect to her seniority date - and that she knew the Union was not going to take any action on her behalf;

(4)  Plaintiff exercised her March 31, 1994 seniority date to move in and out of positions within the Ford plant in or around 1999;

(5)  In 2000, Plaintiff continued to voice complaints that the assignment of her March 31, 1994 seniority date was incorrect, and was told - repeatedly - that the Union did not believe her claims had any contractual merit;

(6)  Plaintiff was a signatory to a grievance filed on February 13, 2001 that alleged seniority assignment violations and a failure to be given preferential status for transfers within Ford;

(7)  Nick Parente, then-President of Local 1250, spoke with Plaintiff in or around September 2001 and informed her that he had checked the contract between Ford and the UAW and believed Plaintiff had "no recourse" under the contract;

(8)  Plaintiff knew, by the end of 2001, that the UAW had withdrawn the February 2001 grievance after finding no evidence to establish the violations complained of;

(9)  Plaintiff was aware, in or around 2001, of other Ford rehires with similar complaints whose grievances were dismissed as untimely because the acts underlying the complaints occurred many years before.

Based on these events, and Plaintiff's sworn deposition testimony, the defendants argue there is no set of facts under which Plaintiff can prove she was unaware of her change in seniority date (which constitutes the alleged breach of the collective bargaining agreement) prior to August 18, 2004. At the very latest, the UAW and Ford contend, Plaintiff's claim began to run on July 2, 2004, when the UAW notified Plaintiff that her May 2003 grievance - which asserted the same issues relating to seniority dates and hiring preferences that she had been asserting since 1996 - had been withdrawn.

Plaintiff, as a preliminary matter, argues that what the defendants are *really* attempting to do by submission of their motions is to attack the timeliness of the filing of the May 2003 union grievance. The Court disagrees with Plaintiff's characterization of the grounds for the defendants' motions for summary judgment. It is clear the defendants are attacking the timeliness of the filing of this action, and not the timeliness of any of the underlying union grievances. The mere fact that the defendants

11

point to events predating the filing of the May 2003 grievance does not mean they are attacking the underlying grievance itself. Defendants are simply using these events to prove Plaintiff's prior knowledge of the acts constituting the violations complained of here - which is entirely appropriate in a Motion for Summary Judgment based on a statute of limitations defense.

As to the timeliness of this action, Plaintiff claims that she filed this action within180 days of the "last action" taken by the Union on this matter and that, therefore, this action is timely. She points to the following time periods as relevant for purposes of the statute of limitations:

(1) August 24, 2004, when the UAW denied her appeal because it was signed by her attorney, which is within six months of the filing of this action; and,

(2) February 6, 2004 and June 8, 2004, when she suffered harms related to recalls that were based on her incorrect seniority date - which was "within six months of her signing the underlying grievance" (presumably Plaintiff is referring to the *appeal* of grievance number GP 2627 - which was signed on February 3, 2004).

Plaintiff admits she was aware in 1989 that her old seniority date was no longer being used by Ford, and that in 1994 she received assignment of a ***new*** seniority date. She testified that she complained about this "pretty much any time they [Union officials] set foot in the plant" between 1996 and 2001. *Plaintiff Dep.*, p. 129. The Court believes a reasonably prudent person in Plaintiff's position would have been aware, at least by 1996, of the need to take action on her complaint that she was being aggrieved by the assignment of her new seniority date.

Despite this knowledge, however, it does not appear that Plaintiff was required to take *legal* action in 1996 because a reasonable person in Plaintiff's position could have believed that there were internal union remedies available at that point. Admittedly, this Circuit has found that the clock can start ticking on a hybrid Section 301 claim at the point in time when a union member becomes aware that the union "does not intend to represent them in their grievance with the employer." *See, e.g.,*

*Gately v. Textron*, 125 F.3d 855 (6th Cir. 1997)(relying on *Noble, supra*). The Court is not convinced on the facts of this case, however, that the statements made by various union officials to Plaintiff in the late 1990's concerning their belief that Plaintiff's complaints were "without merit"- and the fact that they did not file a grievance on behalf of those complaining - necessarily amounts to an <u>unequivocal position</u> that nothing could be done internally against Ford.

By 2001, however, there can be no doubt that the UAW's position was ***not*** equivocal. Indeed, any possible ambiguity was cleared up by the UAW's continued inaction on Plaintiff's behalf. Plaintiff undoubtedly knew this because she joined in a formal grievance filed in February 2001 by union members - rather than the UAW itself - which complained about incorrect seniority dates and non-preferential treatment of rehires during their layoff. The UAW withdrew this grievance on November 27, 2001, stating (as it had been claiming all along) that there was no contractual basis for the grievance. Plaintiff testified she was aware of this decision by no later than the end of 2001 and knew her grievance was "dead" by then.

At that point, Plaintiff should have been put on notice that she needed to take legal action to protect her rights. *See Moore v. UAW Local 598*, 33 Fed. Appx. 165, 168 (6th Cir. 2002)(the phrase "withdrew the grievance" would put a reasonable person on notice that he or she would have to take legal action to protect her rights); *see also Garrish v. UAW Local 594*, 417 F.3d 590, 595 (6th Cir. 2005)("[T]he statute of limitations period begins to run when a plaintiff knows that the union has withdrawn his grievance.")(citing *Noble*, 32 F.3d at 1001-02). Instead, however, Plaintiff continued to complain for the next year and a half without taking any action - internally or externally.

The Court finds, based on these undisputed facts, that the statute of limitations on Plaintiff's claims in this action began to run by no later than the end of 2001 and, thus, expired by mid-2002 - long

13

before this case was filed. While Plaintiff chose to file yet another grievance on her same complaints in May 2003, that act cannot revive an already expired statute of limitations. Thus, barring any legal or equitable mechanism to forgive the untimeliness of her current claims, they must be dismissed.

### a. Continuing Violation

In an effort to extend the statute of limitations, Plaintiff argues in her Memorandum in Opposition that she has invoked her seniority throughout her employment at Ford; therefore, the "underlying grievance" and this action remains timely. In her Complaint, Plaintiff asserts this continuing violation theory by claiming that "the continued denial of a correct seniority date constitutes a continuing violation," and that "each and every employment decision under the collective bargaining agreement that takes Plaintiff's seniority into account is, in and of itself, a separate violation of the collective bargaining agreement." *Complaint*, ¶¶19, 37. An example cited by Plaintiff in her Memorandum in Opposition as support for this theory is that when Ford employees are demoted because of staffing decisions, those employees are "recalled" to their prior positions according to seniority. Plaintiff produced employment records to show that - while her internal appeal of the May 2003 grievance was pending - she was recalled to the Material Handling Department based on seniority. This happened once on February 6, 2004, and again on June 8, 2004. *Plaintiff Dep.*, Ex. 2.

Because, in Plaintiff's view, her seniority will continue to affect her employment status throughout her tenure at Ford, the violation of the collective bargaining agreement continues as well. Under this theory, apparently, as long as Ford continues to refuse to amend her seniority date, and the Union continues to refuse to grieve that fact, the statute of limitations on her hybrid Section 301 claim will never begin to run - or at least will not run until her employment is fully and finally terminated.

Although some courts refuse to apply a continuing violation theory to a hybrid Section 301

14

action, this Circuit has recognized two scenarios under which such a theory may arise - one which this Circuit will recognize, and the other which it will not. Under the first scenario, occurrences within the six-month limitations period *in and of themselves* constitute unfair labor practices. Evidentiary use, therefore, of anterior events is proper in the context of a continuing violation claim because "earlier events may shed light on the true character of matters occurring within the limitations period." *Noble v. Chrysler Motors Corp.*, 32 F.3d 977, 1001 (6th Cir. 1994). Under the second theory, an act occurring within the six-month limitations period can be labeled an unfair labor practice <u>only</u> by reliance on earlier unfair labor practices. The previous unfair labor practices are not merely evidence, therefore, but "serve to cloak with illegality that which was otherwise lawful." *Id.* (citing *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 305 (7th Cir. 1983)). In such a case, there is no continuing violation if the earlier event the complaint is based upon is itself time-barred. Such reliance, in effect, would result in reviving a legally defunct unfair labor practice. *Id.* After a review of the facts and applicable case law, the Court concludes that Plaintiff's claims fall under the second scenario and, thus, she cannot rely on a "continuing violation" theory to revive her "defunct" claims.

Indeed, courts in this Circuit have repeatedly found that the lingering effects of seniority date decisions do not constitute "continuing violations."[4] In an analogous case, the Sixth Circuit held that Chrysler's use of the plaintiffs' allegedly incorrect seniority dates to make termination decisions - and the union's continued failure to represent the plaintiffs in their seniority dispute - was not a continuing violation of Chrysler's earlier denial of different seniority dates. *Nobel v. Chrysler Motors Corp*, 32 F.3d 977, 1001 (6th Cir. 1994). In that case, as here, the plaintiffs filed numerous grievances and

---

[4] *See, e.g., Nobel v. Chrysler Motors Corp*, 32 F.3d 977 (6th Cir. 1994); *Perez v. Roadway Express, Inc.*, 281 F. Supp. 2d 936 (N.D. Ohio 2003); *Bloedow v. CSX Transportation, Inc.*, 319 F. Supp.2d 782 (N.D. Ohio 2004).

appeals founded upon their belief that Chrysler fixed an improper seniority date when they were promoted to new positions following a layoff and rehire. *Id.* at 998-99. The plaintiffs were charged with having knowledge of the acts constituting the violations complained of in their Complaint (which was filed in 1992) on numerous occasions between 1984 and 1988. The plaintiffs, nevertheless, contended that Chrysler's determination of an allegedly incorrect seniority date had a "continuing injurious effect." *Id.* at 1000. Chief Judge James G. Carr of this Court granted summary judgment in favor of the defendants on statute of limitations grounds, despite the plaintiffs' attempted resort to a continuing violation theory. Judge Carr's decision was affirmed on appeal.

Other judges of this Court also have found that repeated violations of alleged seniority rights are not the type of "continuing violation" that will save a plaintiff from the six-month statute of limitations for a hybrid Section 301 claim. In *Perez v. Roadway Express, Inc.*, 281 F. Supp. 2d 936 (N.D. Ohio 2003), the plaintiffs were laid off after complaining for years about incorrect seniority dates and repeatedly voicing their dissatisfaction with the union's "lack of urgency or interest" in handling their grievances. Judge David A. Katz held, in response to the plaintiffs' allegations that the union's continued failure to adequately represent them and the employer's unwavering refusal to honor their seniority was a continuing violation, that "Plaintiffs' claims are not a type that saves them from the statute of limitations." *Id.* at 940. Finally, Judge Ann Aldrich of this Court, in a case again involving the fixing of an alleged "incorrect" seniority date, noted (in rejecting the plaintiff's claims) this Circuit's reluctance to apply a "continuing violation" theory to any hybrid Section 301 claims. *See Bloedow v. CSX Transportation, Inc.*, 319 F. Supp.2d 782, fn1 (N.D. Ohio 2004).

This Court agrees with its colleagues; Plaintiff may not resort to a "continuing violation" theory to avoid the running of the statute of limitations on her claims. If a "violation" occurred in this case,

16

it was complete as of late 2001, when Plaintiff knew that her seniority had been broken **and** that the Union had withdrawn her grievance after finding that no seniority violations had occurred. At this point, Plaintiff should have taken legal action to remedy the alleged violation. Ford's continued use of her 1994 seniority date does not constitute a continuing violation. "Once the original damage is lodged, the mere fact that the Defendants are 'continuing' to implement allegedly improper collective bargaining agreements does not convert Plaintiffs' loss of jobs into a 'continuing violation.'" *Bloedow v. CSX Transportation, Inc.*, 319 F. Supp.2d 782, 788 (N.D. Ohio 2004)(citing *Adkins v. General Motors Corp.*, 573 F. Supp. 1188, 1192 (S.D. Ohio 1983)).

### b. Tolling

Plaintiff's last argument is that the six-month statute of limitations was "equitably tolled" while she pursued internal union remedies. In support of this, Plaintiff cites to *Dunleavy v. Local 1617*, 814 F.2d 1087 (6th Cir. 1987) for the proposition that a statute of limitations on an employee's claim may be equitably tolled if a union member is properly pursuing internal union remedies. Even accepting Plaintiff's assertion that the *Dunleavy* rule applies to hybrid Section 301 claims generally, it does not apply to the particular claims in this case.[5] This is true for the simple reason that the statute of limitations in this case expired during a period of time in which no internal union grievance procedures were pending, and long after Plaintiff had been put on notice that no attempt to pursue such remedies would be fruitful.

Plaintiff cannot rely on her filing of grievance number GP 2627 to "toll" the running of the

---

[5] Ford contends that *Dunleavy* - which was decided in the context of a claim brought under Title I of the Labor Management Reporting and Disclosure Act - does not apply to hybrid Section 301 claims. While the Court believes, as does the Union, that it likely does, the Court need not reach that issue given its other conclusions.

statute of limitations because the statute of limitations had already run when that grievance was filed. Quite simply, there was nothing to "toll" by May of 2003 when that last in a series of grievances over these issues was filed. As of May 2003, after Plaintiff knew that no further attempt at a union remedy would provide the relief she sought <u>and</u> after she had allowed the statute of limitations on her claims to run, the filing of grievance number GP 2627 was a wholly futile act. As such, she cannot rely on it now to revive her stale claims. *Cf., Robinson*, 987 F.2d at 1239 (a hybrid Section 301 claim is not tolled during the time an employee "pursues completely futile internal union remedies.").

IV. **CONCLUSION**

For all of these reasons, the Court concludes that Plaintiff's claims (and those she seeks to pursue on behalf of others "similarly situated") were time-barred when filed and, thus, fail to state claims upon which this Court can grant relief. The Court finds, moreover, that there is no legal or equitable theory upon which Plaintiff can rely to escape the bar to her claims imposed by the applicable statute of limitations.

Accordingly, it is

ORDERED THAT the Motions for Summary Judgment filed by the UAW and Ford (Doc. Nos. 18 and 20) are **GRANTED** and this case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                                           <u>s/Kathleen M. O'Malley</u>
                                                           **KATHLEEN McDONALD O'MALLEY**
                                                           **UNITED STATES DISTRICT JUDGE**

**Dated: September 28, 2006**